UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ORLANDO HARRIS,

    Defendant.

_____/

Case No. 18-20833
District Judge Victoria A. Roberts
Magistrate Judge R. Steven Whalen

## **OPINION AND ORDER DENYING**
## **DEFENDANT'S MOTION TO SUPPRESS (Doc. #17)**

**I.    INTRODUCTION**

At issue is whether this Court should suppress evidence and statements obtained incident to the arrest of Defendant Orlando Harris ("Harris"). Harris says the relevant evidence was obtained during an unconstitutional stop and frisk; moreover, Harris contends that the government extracted incriminating statements without first reading him his *Miranda* rights.

Because the government had reasonable suspicion to both stop and frisk Harris, and Harris fails to point to any interrogative questions that the police asked following his arrest, Harris' constitutional rights were not violated. His motion is **DENIED**.

**II.    BACKGROUND**

Harris is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Harris' indictment stems from a 911 call placed to Detroit Police on the evening of November 28, 2018, close to 9 pm. On that evening, Detroit Police dispatch received a 911 emergency call from a woman ("J.S."), home with her children,

who reported that a man whom she did not know had been knocking at her door "with something" for the past five minutes and refused to leave. Four uniformed Detroit Police officers responded to the call and arrived at the specific address 10 minutes later. Upon their arrival, the officers saw Harris standing in front of J.S.' apartment. As they pulled closer, Harris began to walk away and toward a flight of stairs. The officers got out of their squad car and approached Harris, one of them telling him to "come here." Harris responded "who, me?" and went up the staircase.

The four officers walked up the staircase and found Harris at the end of the second floor landing; the officers positioned themselves between Harris and the staircase. Here, the officers began questioning Harris; the exchange lasted approximately two minutes. They asked him who he was, where he lived, and why he had been knocking on J.S.' door. During the questioning, J.S. came to the bottom of the staircase and yelled to the officers, "yeah, he got a gun too. He had black gloves on . . . it's a black gun, that's what he was beating on my door with."

The officers immediately restrained and frisked Harris; they found a small silver handgun containing a live round, as well as a pair of black and yellow gloves. They arrested Harris for carrying a concealed weapon without a permit.

Harris says there was no reasonable suspicion to stop and frisk him; he contends that the officers acted on an anonymous tip which, in and of itself, was insufficient to establish reasonable suspicion. Moreover, Harris argues that the statements he made following his arrest must be suppressed because the officers failed to read him his *Miranda* rights.

**III.     ANALYSIS**

**A. Harris was Seized on the Second Floor Landing**

A threshold issue is whether Harris was seized under the Fourth Amendment during his interaction with the police on the second floor landing. Harris says that he was; he says that he submitted to the officers and argues that, under the circumstances, a reasonable person would not have felt free to leave the officers' presence. The government says that Harris was not seized; it argues that the officers engaged Harris in a consensual encounter and that, even if the officers did attempt to seize Harris, he never submitted to their show of authority.

The government is wrong; the officers seized Harris when they cornered and began questioning him on the second floor landing.

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. U.S. Const. amend IV; *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). Fourth Amendment protections "extend to brief investigatory stops that fall short of traditional arrest." *United States v. Damitres Ward*, No. 18-3034, 2018 WL 6181644 at *3 (E.D. Mich. Nov. 27, 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

Importantly, all encounters between the police and citizens are not necessarily seizures; indeed, the Sixth Circuit held that "[i]n order for a seizure to occur, the encounter must not be consensual and the officers must use physical force or the individual must submit to the officers' show of authority." *Smith*, 594 F.3d at 535.

Where a seizure is allegedly accomplished by an officer's show of authority, the individual allegedly seized must have actually submitted to that authority; "[w]ithout

3

actual submission, 'there is at most an attempted seizure.'" *United States v. Jones*, 562 F.3d 768, 774 (6th Cir. 2009) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). In analyzing when there is submission to authority, the Supreme Court has noted that "what may amount to submission depends on what a person was doing before the show of authority[.]" *Brendlin*, 551 U.S. at 262. To determine whether an individual has actually submitted where that individual "passively acquiesces" to a show of authority, this Court must look to whether "in view of all the circumstances, a reasonable person would have believed he was not free to terminate the encounter between the police and himself." *Jones*, 562 F.3d at 774 (citing *Brendlin*, 551 U.S. at 255).

The United States Supreme Court held that circumstances indicating a seizure under the reasonable person standard include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Four uniformed police officers ordered Harris to "come here"; when he continued to walk away, the officers followed him up a flight of stairs and to the end of the second floor landing, cornering him. Once the officers met Harris on the second floor landing, they began questioning him about his potential criminal activity. While Harris did not submit to the officers' initial command—and was not seized at that point—he effectively submitted to the officers' authority once he stayed put and began to answer their questions.

Under these circumstances, Harris' acquiescence to the officers' questioning constitutes submission to their show of authority; indeed, the Court finds that "a reasonable person would have believed he was not free to terminate the encounter between the police and himself."

**B. The Officers had Reasonable Suspicion to Seize Harris**

Harris says there was no reasonable suspicion to stop him, rendering the seizure and subsequently obtained evidence invalid.

In support of this contention, Harris claims that J.S.' 911 call was an anonymous tip that the officers could not rely on as a basis for reasonable suspicion. Contrary to Harris' assertions, however, J.S.' 911 call was clearly not analogous to an anonymous tip, and, under the totality of the circumstances, was more than sufficient to provide reasonable suspicion for an investigatory stop.

Law enforcement officials may stop and briefly detain a citizen for investigative purposes "where the 'officer has reasonable, articulable suspicion that [a] person *has been*, is, or is about to be engaged in criminal activity,'" even in the absence of probable cause. *Smith*, 594 F.3d at 536 (citing *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007)). The detaining officer "must be 'able to articulate some minimal level of objective justification for making the stop,' based upon 'specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" *Id.* at 537 (quoting *United States v. Foster*, 376 F.3d 577, 585 (6th Cir. 2004)). Notably, a determination of whether reasonable suspicion existed is made based on the totality of the circumstances known to the detaining officer at the time of seizure. *Id.* Absent

5

reasonable suspicion, an investigatory stop is unconstitutional, and any evidence obtained must be suppressed. *Jones*, 562 F.3d at 773.

J.S.' 911 call, when considered with Harris' response to the officers' initial commands, suffices to create reasonable suspicion. First, contrary to Harris' assertions, a 911 call is not inherently equivalent to an anonymous tip. J.S. provided her name, address, and telephone number; she was also contemporaneously reporting an event she was witnessing. These factors demonstrate that J.S.' call was a far more reliable indicator of criminal activity than the run of the mill anonymous tip. Moreover, once the officers arrived, they saw Harris in front of J.S.' apartment, commanded him to "come here," and pursued him up the staircase after he ignored their command and walked away.

Under the totality of the circumstances, this combination of factors was clearly sufficient to create reasonable suspicion to detain Harris. *See Robinson v. Howes*, 663 F.3d 819 (6th Cir. 2011) (distinguishing a 911 call from an anonymous tip because it "was not completely anonymous," was a "contemporaneous eyewitness account" and reported an emergency; holding that the 911 call, combined with Defendant's nervousness and "hurrying away from the police," was sufficient to establish reasonable suspicion for an investigatory stop.).

**C. The Officers had Reasonable Suspicion to Frisk Harris**

Harris contends there was no reasonable suspicion to frisk him; as such, he says that the gun recovered by the Detroit Police must be suppressed. Again, Harris is wrong.

A *Terry* frisk is distinct from a *Terry* stop; a frisk requires additional justification. Under *Terry*, "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009); *see also Smith*, 594 F.3d at 542 ("An officer is permitted to conduct 'a reasonable search for weapons for [his or her] protection . . . where he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual.'") (quoting *Terry*, 392 U.S. at 27).

Importantly, "in making this determination, 'the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* (quoting *Terry*, 392 U.S. at 27).

The officers frisked Harris only after J.S. approached and told them that Harris had been knocking on her door with a gun. This in-person tip, communicated by an individual with firsthand knowledge, was sufficient in itself to create reasonable suspicion that Harris was armed; the tip, combined with the officers' reasonable suspicion that Harris had been persistently knocking on J.S.' door, at night, refusing to leave, was sufficient to cause "a reasonably prudent man in the circumstances [to believe] that his safety or that of others was in danger.'" *See Robinson*, 663 F.3d at 829-30 ("[t]his Court, in evaluating an in-person tip, found that an informant's proximity in time and space to the reported criminal activity indicated the tip was reliable 'because it reflects that the informant acquired the information firsthand.'") (quoting *Henness v. Bagley*, 644 F.3d 308, 318 (6th Cir. 2011)).

Harris says that J.S.' tip was insufficient to provide reasonable suspicion because the details she provided were not entirely accurate; Harris asserts that the officers found bright yellow gloves and a silver gun, while J.S. told the officers that Harris had worn black gloves and had a black gun. The point is irrelevant; as discussed above, a determination of whether the officers had reasonable suspicion is based on the totality of circumstances known to them at the time of seizure. *See Smith*, 594 F.3d at 537. The fact that J.S. ultimately provided slightly inaccurate details simply does not alter the reasonable suspicion analysis.

Finally, Harris argues that there was no reasonable suspicion because the officers frisked him without asking whether he had a Concealed Pistol License (CPL); he says that, because it is not per se illegal to carry a handgun in Michigan, J.S.' statement that he had a gun could not provide reasonable suspicion to frisk. Again, Harris misses the point. The officers did not frisk him merely because he had a gun; indeed, the totality of the circumstances—including the 911 call, the time of day, Harris' actions, and J.S.' tip—led the officers to reasonably believe that Harris was armed and dangerous.

### D. Harris has Waived his *Miranda* Claim

In his brief in support of this motion, Harris says that the arresting officers interrogated him without first reading him his *Miranda* rights. He says that statements he made in response to their post-arrest questioning must be suppressed.

In its response, the government says that courts never suppress voluntary statements under *Miranda*; it also argues that Harris fails to point to interrogative questions and corresponding answers, and for this reason, too, his *Miranda* claim fails.

8

Harris' argument with respect to this claim is barely half a page long; moreover, and most importantly, he fails to address the government's response in his reply. As such, he has waived his *Miranda* claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

## IV. CONCLUSION

The Detroit Police officers seized Harris when they cornered him on the second floor and began questioning him. They had reasonable suspicion to do this because of the eyewitness 911 call reporting an ongoing emergency, and Harris' own conduct. Those suspicions grew when J.S. told them Harris was the one knocking on her door with a gun, justifying the frisk of Harris.

There was no seizure of Harris in violation of the Fourth Amendment.

Moreover, Harris waived his *Miranda* claim.

Harris' motion to suppress is **DENIED**.

**IT IS ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: March 5, 2019